# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ELAINE B.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 25-1215-JWL** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) consideration of Plaintiff's combination of impairments or of the impact of her mental impairments on her ability to perform past relevant work, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI benefits on December 1, 2021. (R. 17, 188-90).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff acknowledges the ALJ found her mental impairments cause no more than a minimal limitation in her ability to do basic work activities and are non-severe, but argues she failed to consider how the limitations would affect her ability to perform her skilled (Specific Vocational Preparation (SVP) 5) past relevant work.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.
§ 404.1520(e).  This assessment is used at both step four and step five of the sequential
evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining
at step four whether, considering the RFC assessed, claimant can perform her past
relevant work; and at step five whether, when also considering the vocational factors of
age, education, and work experience, she is able to perform other work in the economy.
Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the
burden is on Plaintiff to prove a disability that prevents performance of past relevant
work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the
burden shifts to the Commissioner to show that there are jobs in the economy which are
within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th
Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff first argues that all the medical opinions from sources who treated or
examined her found at least moderate limitations in her mental ability to perform basic
work activities and only the prior administrative medical findings[2] of the state agency

---

[2] "Prior administrative medical findings" is a term of art referring to the findings of state
or federal agency physicians or psychologists about a medical issue at an earlier level of
review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a
"medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably, and

psychological consultants support the ALJ's finding only mild limitations in her mental ability to perform basic work activities and that her mental impairments are not severe within the meaning of the regulations.  (Pl. Br. 12-13).  She argues that the state agency psychological consultants did not have access to the examination report of Dr. Bell, Ed. S., procured over a year later and their opinions "should not be considered substantial evidence in support of the ALJ's finding."  Id. 13 (citing Chapo v. Astrue, 682 F.3d 1284, 1293 (10th Cir. 2012); and Kreger v. Soc. Sec. Admin., No.14-1332-RDR, 2015 WL 3514888, at *9 (D. Kan. Jun. 4, 2015); and thereby implying that Plaintiff's condition had deteriorated and the psychological consultants' opinions are stale).

Plaintiff argues, "the ALJ attempted to rely on [Plaintiff's] basic ability to perform menial daily activities [prepare meals, do laundry and housework, shop, pay bills, handle a savings account, videochat, read, watch television, sit at a park, call her family, live independently, and attend to personal hygiene] to show her mental conditions were non-severe."  Id.  She argues such activities do "not demonstrate that she is able to perform basic mental work activities on a consistent and ongoing basis [and] do not support the ALJ's finding that her mental impairments were non-severe."  Id. 14.

Plaintiff points to the ALJ's finding "no more than a minimal effect on [her] ability to do basic work activities" and concludes "the ALJ's evaluation of the severity of [her] mental impairments necessarily considered only her ability to perform 'basic'

---

the court will follow that practice in this case except when necessary to draw a distinction.

mental work activities." (Pl. Br. 14-15). She argues, "the regulation states that the 'total limiting effects' of an individual's impairment must be considered when assessing the RFC." Id. 15 (quoting 20 C.F.R. § 404.1545(e)). She argues the ALJ made no evaluation how Plaintiff's mental impairments affected her mental abilities beyond basic mental abilities and that "Courts in this district, as well as others, have found such failure to be remandable error." Id. (citing, among other district courts' cases, this court's opinions in Evalyne Kathleen H. v. Kijakazi, No. 21-1020-JWL, 2022 WL 539104, at *7 (D. Kan. Feb. 23, 2022); and Leah A. D. v. Saul, No. 19-1223-JWL, 2020 WL 2849475, at *5-6 (D. Kan. Jun. 2, 2020)).

Plaintiff points out that the "SSA recognizes that certain categories of work require mental abilities beyond the ability to perform 'basic' work activities." And that,

> Semiskilled and skilled work often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." Program Operations Manual System (POMS) § DI 25020.010(B)(4) (bold in original). Furthermore, "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves." Id. Indeed, the regulation also notes that skilled work "may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).
>
> Therefore, an individual's ability to perform "basic" work activities could be intact while her ability to perform the higher functioning required for skilled or semiskilled work could be eroded. In such a situation, a finding of non-severe mental impairments may be appropriate at step two (because there were no limitations in "basic" mental work activities), yet the RFC could still contain limitations impacting the individual's ability to perform

6

the more advanced activities required for skilled work.  Such a finding is even contemplated by SSR [(Social Security Ruling)] 96-8p, which states that "in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work…"  SSR 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. Jul. 2, 1996).

It is unclear from the record how mild limitations in the ability to perform basic work activities, as found by the ALJ (Tr. at 22-23), would impact [Plaintiff's] ability to perform the more rigorous requirements of her skilled past work.  While the ALJ stated she compared the mental demands of that work to the RFC, there is no finding documenting the actual and specific mental abilities required by her work other than the general statement of the SVP level.  (Tr. at 33-34).

(Pl. Br. 16-17).

Plaintiff points to the Dictionary of Occupational Titles (DOT) job description and several requirements respecting her past relevant work as a reservation clerk and argues that the ALJ failed to evaluate how her "mental limitations affected her ability to perform the '[o]ther special abilities' required to perform more [sic] her specific past skilled work." Id. 18 (quoting POMS § DI 25020.010(B)(4)).  She argues the ALJ's failure to consider the impact of her mental impairments "on her ability to perform the heightened mental requirements of her past relevant work was error." Id. (citing, among other district court cases, Evalyne Kathleen H., 2022 WL 539104, at *7).

The Commissioner argues the discussion desired by Plaintiff is not required because the regulations "merely require an ALJ to consider non-severe impairments when determining what types of work may be precluded by [Plaintiff's] impairments." (Comm'r Br. 5) (citing 20 C.F.R. § 404.1545(e)).  He argues that the ALJ properly considered and found Plaintiff's mental impairments not severe at step two of the

7

sequential evaluation process.  (Comm'r Br. 5).  The Commissioner argues Plaintiff's claim that the ALJ should have discussed the effect of her mental impairments on her past relevant work is incorrect because the regulations require only that the ALJ consider work-related limitations caused by non-severe impairments when assessing RFC for work but do not require a separate discussion of the effect of non-severe impairments on work. Id., at 6.  The Commissioner explains his view, "All that is required, then, [is] some indication in the decision that the ALJ considered Plaintiff's non-severe mental impairments when assessing the RFC, which plainly exists here, not the detailed discussion Plaintiff's claims is required."  Id. 7.  The Commissioner cites the evidence discussed and the evidence the ALJ stated she considered and argues this is sufficient indicia of her consideration of the effects of Plaintiff's mental impairments.  Id. 8-9.

> The Commissioner concluded:

> Overall, there is no suggestion that a finding of "slight" issues at step two should translate into the inclusion of workplace restrictions in the RFC. Also, the controlling regulations do not require a separate discussion as to why slight issues at step two do not translate into workplace restrictions. All that is required is that the decision as a whole demonstrates that the ALJ considered non-severe impairments when assessing Plaintiff's RFC, which it does. And if the ALJ finds that no types of work are precluded due to mental impairments, the level of discussion required does not change because Plaintiff's past work is skilled.

Id. 13.

The Commissioner next argues the ALJ applied the correct legal standard when evaluating medical opinions and more-than-substantial evidence supports her findings. Id.  He argues the ALJ appropriately evaluated the opinions of the state agency psychological consultants and considered their opinions in relation to all the record

8

evidence including the more recent evidence such as Dr. Bell's examination report. (Comm'r Br 15). He argues Dr. Bell's examination does not compel a finding Plaintiff's mental condition worsened after the consultants formed their opinions. Id. He argues that, at best, Plaintiff is merely asking the court to reweigh the evidence and substitute its opinion for that of the ALJ. Id.

In her Reply Brief, Plaintiff argues the Commissioner's argument relies greatly on the ALJ's discussion in her consideration at step two of the sequential evaluation process, that the sole consideration in the standard at step two is the claimant's ability to perform basic work activities, and that the ALJ failed to "make any specific finding regarding [Plaintiff's] ability to perform the increased mental abilities required of her past relevant work." (Reply 2). She reiterates her position that this omission is error. Id. She argues the ALJ's discussion in the decision does not demonstrate consideration of her mental abilities to perform skilled mental work activities and demonstrates that the ALJ failed to consider her "ability to perform the increased mental demands of her skilled past relevant work as a reservation clerk." Id. 4.

## A.    The ALJs Relevant Findings

The ALJ found that Plaintiff has the medically determinable impairments of "major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), unspecified obsessive-compulsive and related disorder by history, trichotillomania [(hair-pulling disorder)], and adjustment disorder." (R. 20). She also found these impairments are non-severe because "medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more

9

than a minimal effect on an individual's ability to perform basic work activities." (R. 20). She also noted that "any potential associated functional limitations have been contemplated in the residual functional capacity [assessed] in consideration of the claimant's severe impairments." Id.

The ALJ noted that even before her alleged onset date Plaintiff had been prescribed medication for depression and anxiety and in early 2021 (while Plaintiff was still working at a skilled level) she had attended only three out of eight outpatient mental health therapy appointments. Id. The ALJ found Plaintiff had only mild limitations in all four broad areas of mental functioning. Id. 22-23.

The ALJ discussed all of the medical opinions respecting Plaintiff's mental limitations in her step two discussion. Id. 23-25. She found the medical opinions of the state agency psychological consultants, Dr. McAllister and Dr. Turner, to be persuasive because they "are supported by a review and explanation of the evidence available at the time, including the initial consultative evaluation" of Dr. Wunderlich, id. 23 (citing Ex. 17F), and "are consistent with subsequent evidence of record, including the more recent consultative evaluation" of Dr. Bell. Id. citing Ex. 27F). She concluded the findings of the State agency psychological consultants "are internally consistent and consistent with the evidence as a whole, which does not support a need for functional limitations in a work setting." Id.

The ALJ found Dr. Wunderlich's opinion only partially persuasive and explained that his opinions regarding mild limitations in Plaintiff's ability to understand, remember, and sustain concentration, persistence, and pace "are supported by the objective findings

at the consultative evaluation that showed no significant deficits in her memory or attention/concentration and are consistent with her reports of preparing meals, complet[ing] housework, driv[ing], shop[ping] by phone, handl[ing] finances, videochat[ting], read[ing], and do[ing] Bible studies." (R. 24). On the other hand, she found his opinions regarding moderate to marked limitations are not supported by "objective findings of cooperative behavior, adequate eye contact, and relevant, coherent, and organized speech" or "by her reports to Dr. Wunderlich of living independently, managing her own bank account and bills, driving independently, and maintaining personal hygiene practices independently," and are not consistent with "other evidence of record, including her testimony of maintaining contact with her pastor and a friend without apparent difficulties," or "with other evidence of record, including similar abilities detailed in her function reports and reported at the later consultative evaluation." Id.

The ALJ found Dr. Bell's opinion only partially persuasive and explained that her opinions about "no more than mild limitation in sustained concentration and persistence and carrying out multistep and complex instructions [are] supported by Dr. Bell's own objective findings and are consistent with the objective findings from the initial consultative evaluation and the ability to provide a detailed history." Id. The ALJ found, however, that Dr. Bell's opined moderate limitations are not supported by and are not consistent with the record evidence in particular respects and that, moreover, "the opinion is somewhat internally inconsistent in the limitations opined in the narrative of the examination and in the attached medical source statement." Id. 24-25.

11

Finally, the ALJ found Dr. Alvarado's opinion respecting Plaintiff's mental condition only partially persuasive because it "is partially supported by an explanation and Dr. Alvarado's own treatment and examinations of the claimant, which have shown no significant deficits," and "is partially consistent with other evidence of record, including the consultative evaluations, which showed cooperative behavior, appropriate grooming, intact judgment and insight, and no significant deficits in memory or attention/concentration."  (R. 25).

The ALJ noted that in assessing her RFC finding she had considered Plaintiff's allegations of symptoms to "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p, and "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." Id. 27.  The ALJ explained her consideration of Plaintiff's allegations of disability with respect to her mental impairments:  "Some of the mental abilities and social interactions required in order to perform [Plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment." Id. 31.

Finally, in finding Plaintiff capable of performing her past relevant work as a reservation clerk, the ALJ stated she had compared Plaintiff's RFC with the mental demands of that work and found Plaintiff "is able to perform it as generally performed." Id. 33.  She later concluded, "After reviewing the objective evidence and considering the testimony of the claimant, the testimony of the vocational expert, and the residual

functional capacity, the undersigned concurs with the vocational expert and finds the claimant is able to perform the past relevant work." (R. 34).

### B.   Analysis

Plaintiff's suggestion that the state agency psychological consultants' opinions are not substantial evidence because they were formed more than a year before and without benefit of Dr. Bell's opinion and were, therefore, stale, ignores both the record evidence and the ALJ's findings.  The ALJ, who reviewed the record evidence and both the state agency psychological consultants' opinions and Dr. Bell's opinion, found that Dr. Bell's opinion respecting moderate limitations was neither supported by nor consistent with the record evidence whereas his opinion respecting mild limitations was both supported by and consistent with the record evidence and she provided citations to record evidence in support of her findings.  Id. 24-25.  Moreover, she found the consultants' opinions more consistent with the record evidence including persuasive portions of both Dr. Wonderlich's earlier consultative examination report and Dr. Bell's more recent examination report.  Id. 23.  Plaintiff does not argue that the evidence does not support the ALJ's findings, she argues that the court should weigh the evidence differently than did the ALJ, affording greater weight to Dr. Wonderlich's and Dr. Bell's opinions.

Plaintiff's argument that the ALJ considered only her ability to perform basic mental work activities ignores the ALJ's decision.  First, the ALJ noted that Plaintiff was successfully working at her skilled past relevant work as a reservation clerk despite treatment for anxiety and depression in March 2015 and was treated for PTSD in early 2021 and attended only three of eight therapy appointments—suggesting it was not a

worrisome or limiting impairment.  (R.  20) (citing Ex. 5F at 88-90 and Ex. 6F).  She also noted that "any potential associated functional limitations have been contemplated in the residual functional capacity [assessed] in consideration of the claimant's severe impairments."  Id.  The ALJ found the state agency psychological consultants' opinions persuasive and noted their "findings are internally consistent and consistent with <u>the evidence as a whole, which does not support a need for functional limitations in a work setting</u>."  (R. 23) (emphasis added).  The ALJ stated she had made her RFC assessment "[a]fter careful consideration of the entire record."  That assessment does not include any mental limitations from work activity.  Id. 27 (finding no. 5, bold omitted).

The ALJ summarized her RFC assessment:

the facts contained in the record do not dispute that the claimant has conditions, which singly or in combination, may cause functional limitations.  What the evidence suggests, however, is that the claimant's symptoms may not exist at the level of severity asserted by the claimant's testimony at hearing, and do not have the negative impact upon the claimant's ability to engage in work activity that has been alleged.  The above residual functional capacity, as determined by the undersigned, considers the reliable evidence regarding the extent of the claimant's functional impairments.

Id. 33.

Finally, the ALJ stated she had compared "the claimant's residual functional capacity with the physical and mental demands of this [past relevant] work, [and] finds that the claimant is able to perform it as generally performed."  Id.  As the Tenth Circuit has explained, the general practice of a reviewing court

is to take a lower tribunal at its word when it declares that it has considered a matter.  See United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison

14

time for probation violation, but court need only say that it has done so); cf. Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a de novo review of the record").

Hackett, 395 F.3d at 1173.  Plaintiff has shown no reason to depart from the general practice in this case and the court finds none.

The ALJ in this case stated she considered all the record evidence and she assessed an RFC for Plaintiff, providing reasons in her decision for the RFC assessed.  Therefore, rather than arguing that the ALJ should have provided more discussion than required by the statute or the regulations, it was Plaintiff's burden to show error in the ALJ's rationale.  In this case that requires pointing to record evidence which compels finding mental functional limitations not assessed by the ALJ and which preclude performance of Plaintiff's past relevant work as it is generally performed in the national economy.  Plaintiff has not done so and has not met her burden of proof.  Here, instead of arguing the POMS's caution that skilled work often presents "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**," she needed to point to record evidence which compels finding increased requirements presented by Plaintiff's past relevant work.  She has not done so, and the court does not find such evidence.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

15

Dated July 22, 2026, at Kansas City, Kansas.

s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**